# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3681

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Western |
| | * | District of Missouri. |
| Mark Allen Hallam, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 12, 2004
Filed: May 17, 2005

_____

Before MORRIS SHEPPARD ARNOLD, MCMILLIAN, and MELLOY, Circuit
Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Mark Hallam was convicted of two counts of possessing a firearm while being
a felon and unlawful user of a controlled substance in violation of 18 U.S.C.
§ 922(g)(1), (3).  The firearms at issue were discovered and seized during two
searches, separated by several months, that were conducted at Mr. Hallam's home
pursuant to state search warrants.  The district court[1] denied Mr. Hallam's motion to

_____

[1]The Honorable Richard E. Dorr, United States District Judge for the Western
District of Missouri, adopting the report and recommendations of the Honorable
James C. England, United States Magistrate Judge for the Western District of

suppress the firearms, which was based on the alleged insufficiency of the affidavits supporting the two warrants. Mr. Hallam conditionally pleaded guilty to both counts, reserving the right to have this court review the denial of his suppression motion. He now appeals, contending that the district court erred in denying his motion to suppress and in determining his sentence. We affirm.

I.

A.

We first address the district court's refusal to suppress the guns seized from Mr. Hallam's residence during the first search. The fourth amendment, applicable to the states through the fourteenth amendment, protects individuals' rights to be secure in their homes against "unreasonable" searches, and provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV. It is uncontested that the first search warrant was invalid because the information contained in the affidavit in support of the warrant was insufficient to establish probable cause, and that the search thus violated Mr. Hallam's constitutional rights.

At issue is whether the district court correctly held that the illegally seized evidence was admissible against Mr. Hallam because the warrant, despite its invalidity, was executed in good faith. As a general matter, in the absence a valid search warrant issued by a detached and neutral magistrate pursuant to his independent determination of probable cause, evidence discovered by the police during a non-consensual search of a defendant's home is not admissible at the defendant's trial, *see Mapp v. Ohio*, 367 U.S. 643, 655-57 (1961). The fourth amendment, however, does not itself "expressly preclud[e] the use of evidence obtained in violation of its commands," *United States v. Leon*, 468 U.S. 897, 906 (1984), and the Supreme Court has held that evidence obtained by an officer pursuant

Missouri. *See* 28 U.S.C. § 636(b)(1)(B).

-2-

to an invalid warrant need not be excluded from the prosecution's case-in-chief if the officer's reliance on a magistrate's erroneous probable-cause determination was "objectively reasonable" and manifested "objective good faith," *id.* at 922-23. The reasonableness of the execution of the warrant at issue here is a mixed question of law and fact that we review *de novo*, considering all of the relevant circumstances. *See, e.g., United States v. Marion*, 238 F.3d 965, 968-69 (8th Cir. 2001); *United States v. Riedesel*, 987 F.2d 1383, 1391 (8th Cir. 1993).

B.

The county prosecutor who applied for the warrant to search Mr. Hallam's residence presented an affidavit signed by Trooper Kelsey Rutledge in support of the application. The affidavit provided the following factual basis for Trooper Rutledge's information and belief that probable cause existed:

> [W]ithin the last 6 hours, a cooperating individual advised me in person that he had seen methamphetamine on the dining room table of the Mark Hallam residence. ... [T]he cooperating individual had been stopped by me in a traffic stop, and provided this information after I had arrested him for felony driving while revoked ... and had found marijuana on his person in the course of a search incident to arrest. The cooperating individual indicated he had seen the methamphetamine only minutes before, as he had just left the Mark Hallam residence prior to my stopping him.

The affidavit went on to describe the precise location of the "property where the methamphetamine was seen by the confidential informant." Based on this affidavit, a state magistrate signed a search warrant and Trooper Rutledge and other state officials executed the search, during which eight guns were seized.

The district court determined that Trooper Rutledge's affidavit failed to establish probable cause, as it did not include any information regarding the reliability of the unnamed "cooperating individual" or any corroborating information. The court

concluded, however, that Mr. Hallam's motion to suppress the evidence obtained through the first search warrant should be denied because Trooper Rutledge had acted in good-faith reliance on the warrant in executing the search. The Supreme Court has noted that the so-called "good faith" exception to the exclusionary rule is broad, advising that "a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search," and thus that exclusion of evidence discovered during the search is inappropriate. *Leon*, 468 U.S. at 922 (internal quotations omitted). The Court has made clear, however, that suppression of the fruits of a search conducted pursuant to an invalid warrant remains the appropriate remedy "in cases where the issuing magistrate wholly abandoned his judicial role" or where the warrant is "based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," among other situations. *Id.* at 923 (internal quotations omitted). Mr. Hallam contends that the first search warrant exhibits both of these infirmities, and that the district court thus erred in denying his motion to suppress.

## C.

Mr. Hallam contends first that Trooper Rutledge's reliance on the warrant was objectively unreasonable because the magistrate abandoned his judicial role in issuing it. Trooper Rutledge met with a prosecutor at about 2:00 AM on the day of the search. They collectively prepared an affidavit and search warrant for the magistrate to sign, and then asked the magistrate to come to the prosecutor's office. Trooper Rutledge testified during the suppression hearing that the issuance of the warrant took place in a "pretty casual atmosphere," that the magistrate had no questions and made no statements about the search warrant or affidavit, and that the magistrate "was anxious to get back to bed."

While the magistrate's relative silence and his desire to return to his slumber might tend to show that he was acting as a mere "rubber stamp" instead of actively making an independent probable cause determination, such behavior is only to be

expected from a man who has been rousted out of bed in the middle of the night. There is no indication that the magistrate was biased or impartial, nor is there any evidence of a pattern of passive, automatic issuance of warrants. The record provides only a very limited insight into the magistrate's internal mental processes, and we simply do not have sufficient information to conclude that he "wholly abandoned his judicial role."

D.

Mr. Hallam also contends that the firearms should be suppressed because Trooper Rutledge's affidavit, which provided the only factual basis for the magistrate's probable cause determination, was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." Both parties agree that the affidavit failed to provide sufficient facts establishing the reliability of the statements of the "cooperating individual." It did, however, provide some fairly specific information in the form of first-hand observation of the unnamed informant that methamphetamine would be found at the residence of Mr. Hallam; all that was missing was an additional factual basis to corroborate this evidence. We conclude that the affidavit, while scant, was not so utterly lacking in facts as to render Trooper Rutledge's belief that it established probable cause "entirely unreasonable."

E.

Background facts disclosed by Trooper Rutledge during his testimony at the suppression hearing also indicate that he was acting with good faith in relying on the magistrate's probable cause determination. Trooper Rutledge testified that this was the first search warrant that he had sought since beginning his job with the highway patrol. He executed the warrant after two attorneys, the prosecutor and the magistrate, represented to him that the affidavit established probable cause. Trooper Rutledge testified that he believed that he had probable cause to conduct the search, and that he relied upon the fact that the magistrate had signed the warrant. Due to his relative inexperience in dealing with search warrants and his limited legal knowledge,

-5-

it was reasonable for him to give some deference to the judgment of the prosecutor and the magistrate, and there is no reason to presume that his reliance on their affirmations and on the magistrate's issuance of the warrant was in bad faith.

Prior to the preparation of the affidavit, Trooper Rutledge showed the prosecutor a statement signed by the informant mentioned in the affidavit (who turned out to be Mr. Hallam's brother), which stated that he "saw meth on the table of Mark Hallam tonight on the dinning [sic] room table in two separate bags," and described where Mr. Hallam lived. In addition, the trooper told the prosecutor about a conversation that he had had with Mr. Hallam's brother in which the brother described other drug-related incidents that the trooper was able to corroborate independently. Trooper Rutledge testified that Mr. Hallam's brother provided the incriminating information about Mr. Hallam in exchange for an agreement to "cut him a deal" on traffic and drug charges that he was facing. Trooper Rutledge also told the prosecutor about another incident that occurred two days prior to the issuance of the warrant involving a man named Paul Murphy. He had arrested Mr. Murphy for a traffic violation, after which Mr. Murphy disclosed to him that Mr. Hallam was producing large quantities of methamphetamine, and was employing Mr. Murphy's ex-wife and supplying her with methamphetamine.

Trooper Rutledge testified that the typical procedure in obtaining a warrant is that the troopers "go to [the prosecutor] with information, give him the case, and basically he types things up for us." He testified that the prosecutor wrote up the affidavit that he signed and that for some reason unknown to him, the prosecutor failed to include in the affidavit any information about the informant's identity, the additional independently corroborated information relayed by the informant, or the conversation with Mr. Murphy, and that he had relied on the prosecutor to include in the affidavit whatever the prosecutor thought was necessary. Had the affidavit contained the additional facts that Trooper Rutledge relayed to the prosecutor, it quite likely would have established probable cause, as these facts tended to bolster the

-6-

reliability of the information that the prosecutor did include in the affidavit. In any event, we agree with the district court that, based on the totality of circumstances, including facts that do not appear on the face of the affidavit, "[i]t was entirely reasonable for Trooper Rutledge to have believed that probable cause existed," and "Trooper Rutledge acted in good faith in relying on the county prosecutor and state judge's probable cause determination." We thus conclude that the district court's denial of Mr. Hallam's motion to suppress the firearms seized during the first search of his home was not erroneous.

## II.

We next address the district court's refusal to suppress a firearm found in Mr. Hallam's home during the second search. Mr. Hallam contends that the evidence seized during the second search should have been suppressed because it is a "fruit of the poisonous tree," as the affidavit in support of the second search warrant was based in part on information gleaned as a result of the first search conducted pursuant to the first, deficient search warrant. This argument is disposed of by our holding above that the first search was conducted in reasonable good-faith reliance on the invalid warrant; the good faith served to purge any taint that might otherwise require exclusion of evidence that was obtained during the second search as a proximate result of the inadequate first warrant.

Mr. Hallam also argues that the second search warrant was invalid because the affidavit in support of the warrant, signed by Deputy Chris Spratt, did not establish probable cause. The district court determined that "[t]he affidavit in support of the [second] search warrant is replete with reliable information and clearly provides probable cause for a search warrant of Defendant's residence." In reviewing the issuance of a warrant, a district court need not make a *de novo* inquiry into the existence of probable cause, but rather should uphold the decision to issue the warrant so long as it is supported by "substantial evidence in the record." *See Massachusetts v. Upton*, 466 U.S. 727, 728 (1984) (per curiam).

Deputy Spratt's affidavit stated that a "reliable informant" had reported to him that he had witnessed Mr. Hallam cooking methamphetamine in the kitchen and bathroom of Mr. Hallam's house, that several thousand dollars in cash was hidden in vehicles parked outside Mr. Hallam's residence, that Mr. Hallam had surveillance cameras watching the highway outside his house, and that methamphetamine, pills, and marijuana were hidden in several precisely identified locations at Mr. Hallam's residence, including behind false floors and inside hidden compartments and chicken coops. The affidavit stated that the informant had bought methamphetamine from Mr. Hallam off and on for three years and was willing to testify against him. Deputy Spratt's affidavit also stated that a man named Mark Neil, whose methamphetamine was discovered during a search following an arrest for a traffic violation, disclosed that he had obtained the drugs from Mr. Hallam that very day, and that he had purchased drugs from Mr. Hallam about seventy-five times over the past year. Finally, Deputy Spratt, who had taken part in the first search, stated in the affidavit that he had personally received numerous phone calls since Mr. Hallam's last arrest "stating that he is back to cooking and selling methamphetamine and Marijuana."

We agree with the district court that the probable cause determination was supported by substantial evidence. The various sources referred to in Deputy Spratt's affidavit all pointed to the same conclusion that Mr. Hallam was operating an illegal drug business out of his home, and some of that information was exceptionally detailed. Collectively, the information provided in the affidavit quite clearly gives rise to "a fair probability that contraband or evidence of a crime," *Illinois v. Gates*, 462 U.S. 213, 238 (1983), would be found at Mr. Hallam's residence. We thus affirm the denial the motion to suppress the firearm seized during the second search.

## III.

Finally, we address the two sentencing questions raised by this case. The first is whether the district court erred when it enhanced Mr. Hallam's guidelines sentencing range pursuant to U.S.S.G. § 2K2.1(b)(5). The second is whether the

district court committed plain error by sentencing Mr. Hallam pursuant to the mandatory-guidelines regime instead of the advisory-guidelines regime laid out in *United States v. Booker*, 125 S. Ct. 738 (2005). We answer both questions in the negative.

We conclude that the district court appropriately calculated Mr. Hallam's guidelines sentencing range, which is advisory in the wake of *Booker,* 125 S. Ct. at 756-57. Section 2K2.1(b)(5) provides that a court should add four levels to a defendant's offense level "[i]f the defendant used or possessed any firearm ... in connection with another felony offense." Mr. Hallam argues that there is no evidence that he committed another felony offense and, in the alternative, that there is no evidence connecting the firearms to any such offense that he committed.

In our view, the record supports the district court's conclusion that Mr. Hallam committed at least one other felony offense. When the police searched Mr. Hallam's house the first time, they found (in addition to ten firearms) drug paraphernalia associated with the manufacture and distribution of methamphetamine, almost four grams of methamphetamine, and almost $800 in cash. (He does not deny that the police found these items.) This evidence, along with the statements by Mr. Hallam's brother and Mr. Murphy, *see generally United States v. Tucker*, 286 F.3d 505, 510 (8th Cir. 2002), more than supports the district court's finding under a preponderance-of-the-evidence standard that Mr. Hallam committed other felony offenses, namely the attempted manufacture of methamphetamine, Mo. Rev. Stat. § 195.211 (2004), possession with the intent to distribute methamphetamine, *id.*, and possession of drug paraphernalia with the intent to manufacture methamphetamine, Mo. Rev. Stat. § 195.233. *See generally United States v. Marks*, 328 F.3d 1015, 1017 (8th Cir. 2003). And in fact, Mr. Hallam had been charged with these crimes in Missouri state court at the time of his sentencing.

We also conclude that the district court appropriately determined that the firearms were connected with these other offenses. When the other offenses are drug related, as they are here, the four-level enhancement is appropriate unless it is " 'clearly improbable' " that the firearms were used in connection with those offenses. *See United States v. Regans*, 125 F.3d 685, 687 (8th Cir. 1997), *cert. denied*, 523 U.S. 1065 (1997) (quoting U.S.S.G. § 2D1.1 comment. (n. 3)); *United States v. Kanatzar*, 370 F.3d 810, 815 (8th Cir. 2004), *vacated on other grounds by* 125 S. Ct. 1010 (2005). "In connection with means that the firearm must have [had] ... the potential of facilitating [ ] another felony offense; its presence or involvement cannot [have] be[en] the result of accident or coincidence." *United States v. Frederickson*, 195 F.3d 438, 439-40 (8th Cir. 1999) (per curiam) (internal quotations omitted). We cannot say that it is "clearly improbable" that the firearms found at the house had the potential of facilitating the drug crimes which probably occurred at the house, as firearms are "tools of the drug trade providing protection and intimidation," *United States v. Linson*, 276 F.3d 1017, 1019 (8th Cir. 2002); *see United States v. Brown*, 148 F.3d 1003, 1009 (8th Cir. 1998), *cert. denied*, 525 U.S. 1169 (1999).

Turning to the second sentencing question, we hold that the district court did not plainly err by sentencing Mr. Hallam under the mandatory-guidelines regime. To demonstrate plain error, Mr. Hallam would have to show, based on the record as a whole, that there is a reasonable probability that he would have received a more favorable sentence had the judge sentenced him under the advisory-guidelines system. *United States v. Pirani*, No. 03-2871, 2005 WL 1039976, at *6 (8th Cir. April 29, 2005) (en banc). Mr. Hallam cannot make this showing. The only evidence that the judge might have given him a lower sentence under the new system is that the judge sentenced him to the bottom of the guidelines range. Under *Pirani*, however, that is not enough to carry the defendant's burden. *Id.* at *7.

-10-

## IV.

For the reasons given, we affirm the district court's denial of Mr. Hallam's motion to suppress and affirm his sentence.

_____