# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 06-3500

———————

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*　Appeal from the United States
　　　　　　　　　　　　　　　　　*　District Court for the
　　　v.　　　　　　　　　　　　　*　Southern District of Iowa.
　　　　　　　　　　　　　　　　　*
Steven Wayne Pruett,　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

———————

Submitted: April 10, 2007
Filed: September 6, 2007

———————

Before MELLOY, BOWMAN, and GRUENDER, Circuit Judges.

———————

BOWMAN, Circuit Judge.

A jury convicted Steven Wayne Pruett on six criminal counts relating to the possession and distribution of methamphetamine. Pruett appeals, contending that the District Court[1] erred by: (1) admitting evidence derived from a search of his residence, (2) denying his motion to dismiss two counts allegedly filed in retaliation for his refusal to plead guilty, (3) denying his motion for a judgment of acquittal on the charge of conspiracy to distribute methamphetamine, (4) denying his motion for a new

———————

[1]The Honorable Ronald E. Longstaff, then Chief Judge of the United States District Court for the Southern District of Iowa.

trial, and (5) submitting to the jury the charge of use of a firearm in furtherance of a drug trafficking crime. We affirm.

## I.

On September 25, 2004, Deputy Jess Aesoph of the Monona County, Iowa, Sheriff's Department was told by a confidential informant (CI) that Pruett was in possession of a large amount of methamphetamine and had attempted to sell some of it to the CI the previous day. The CI stated that Pruett had been driving a blue Chevrolet pickup truck at the time of the attempted sale. The CI gave Deputy Aesoph directions for locating Pruett's residence on Ideal Avenue in Pisgah, Iowa.

Deputy Aesoph was familiar with Pruett from a previous traffic incident in which Pruett was driving a blue Chevrolet pickup truck. A vehicle records check confirmed that a blue Chevrolet truck was registered to Pruett. Deputy Aesoph also ran a check on Pruett's driver's license and discovered that two addresses were listed for Pruett in Pisgah—one of them on Ideal Avenue. To ensure that he had Pruett's correct residential address, Deputy Aesoph followed the directions given by the CI. The directions led him to a house on Ideal Avenue where a blue Chevrolet pickup truck was parked. Deputy Aesoph took photographs of the house and the truck. Deputy Aesoph also spoke with officers from the Harrison County, Iowa,[2] Sheriff's Department who confirmed the location of Pruett's residence.

On September 26, 2004, Deputy Aesoph applied for a warrant to search Pruett's residence at 104 Ideal Avenue in Pisgah, Iowa. A state magistrate judge issued the warrant, and Deputy Aesoph and Harrison County officers executed the warrant that day. During the search, officers found two firearms, 9.65 grams of methamphetamine, 3.96 grams of marijuana, and a digital scale.

---

[2]Pisgah is in Harrison County, which borders Monona County.

On June 22, 2005, a six-count indictment was filed in the Southern District of Iowa charging Pruett with conspiracy to distribute methamphetamine (Count 1), possession with intent to distribute methamphetamine (Count 2), possession of a firearm in furtherance of a drug trafficking crime as charged in Counts 1 and 2 (Count 3), possession of a firearm by an unlawful user of a controlled substance (Count 4), and two counts of distribution of methamphetamine to a person under twenty-one years of age (Counts 5 and 6). Pruett was arrested on June 27, 2005. At the arraignment, an Assistant United States Attorney informed Pruett's counsel that additional charges were being investigated. On July 22, 2005, a superseding indictment was filed, adding charges of distribution of methamphetamine (Count 7) and use of a firearm in furtherance of a drug trafficking crime (Count 8).

Pruett filed a motion to suppress evidence derived from the search of his residence and a motion to dismiss Counts 7 and 8. The District Court denied both motions, and the case proceeded to trial. On March 9, 2006, a jury found Pruett guilty on Counts 1, 2, 4, 6, 7, and 8, and not guilty on Counts 3 and 5. After denying Pruett's motion for a judgment of acquittal or a new trial, the District Court sentenced Pruett to a term of 168 months' imprisonment.

II.

Pruett's first argument on appeal is that the District Court erred by failing to suppress evidence obtained from the search of his residence. Pruett asserts that the search warrant application failed to establish probable cause that evidence of a crime would be found at his residence. The District Court declined to make a determination as to probable cause, ruling instead that even assuming probable cause was lacking, the good-faith exception to the Fourth Amendment exclusionary rule applied and the evidence was admissible. See United States v. Leon, 468 U.S. 897, 921–22 (1984) (establishing the good-faith exception). In reviewing a district court's denial of a

suppression motion, we review factual findings for clear error and legal conclusions de novo. United States v. Rodriguez, 484 F.3d 1006, 1010 (8th Cir. 2007).

If the District Court was correct in concluding that the Leon good-faith exception to the exclusionary rule applies, it is unnecessary for us to engage in a probable-cause analysis. See Rodriguez 484 F.3d at 1011. We therefore choose to begin by reviewing the District Court's application of the Leon exception. Under Leon, "the Fourth Amendment exclusionary rule is not to be applied to exclude the use of evidence obtained by officers acting in reasonable reliance on a detached and neutral magistrate judge's determination of probable cause in the issuance of a search warrant that is ultimately found to be invalid." United States v. Hessman, 369 F.3d 1016, 1020 (8th Cir. 2004) (internal quotations and citations omitted), cert. denied, 543 U.S. 1072 (2005). The Leon exception recognizes that "the exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates." Leon, 468 U.S. at 916. Thus, evidence seized in carrying out a search warrant should not be suppressed on account of an absence of probable cause when an officer's reliance on the warrant is objectively reasonable. Hessman, 369 F.3d at 1020. The Leon exception does not apply, however, in four circumstances: (1) when "the issuing magistrate wholly abandoned his judicial role," (2) when the warrant is "based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" (3) when the warrant is "so facially deficient . . . that the executing officers cannot reasonably presume it to be valid," and (4) when the issuing magistrate was misled by false information in an affidavit that the affiant knowingly or recklessly included. Leon, 468 U.S. at 923 (citations omitted). Pruett contends that these circumstances are present here, making the Leon exception inapplicable and requiring the suppression of evidence obtained from the search of his residence. After reviewing the actions of the magistrate and the police officers in this case, we disagree and conclude that the Leon exception applies.

A.

First, Pruett asserts that the magistrate who issued the warrant abandoned his neutral and detached role by ratifying the uncorroborated statements of Deputy Aesoph without performing a proper probable-cause analysis. In support of this theory, Pruett points to the magistrate's mischaracterization of the CI as a "peace officer" in the endorsement attached to the warrant and the magistrate's issuance of the warrant despite "the facially obvious defects in the [warrant] Application." Appellant's Am. Br. at 11. Pruett further contends that the magistrate did not follow Iowa law requiring a magistrate issuing a search warrant to include an "abstract of each witness' testimony" upon which the magistrate relied. Iowa Code § 808.3 (2005).

Although the magistrate mistakenly identified the CI as a "peace officer" in the endorsement of the warrant, it appears that at that point in the endorsement the magistrate was describing the *affiant* and simply wrote the wrong word. This conclusion is supported by the fact that the magistrate identified the CI as a "concerned citizen" in the next section of the endorsement. While this mistake may show carelessness, it does not demonstrate the abandonment of the magistrate's neutral and detached role. Nor do the minor facial defects on the warrant application, discussed below, suggest that the magistrate abandoned his judicial role. We further give little credence to Pruett's argument, raised for the first time on appeal and thus evaluated under the plain-error standard,[3] that the magistrate violated state law in issuing the warrant. While Iowa Code section 808.3 generally requires the magistrate

---

[3]Arguments raised for the first time on appeal are reviewed for plain error. United States v. Ruff, 472 F.3d 1044, 1047 (8th Cir.), cert. denied, 127 S. Ct. 2069 (2007).

to include an abstract of a witness's testimony *or* a witness's affidavit,[4] section 808.3 makes a specific exception when probable cause is based on information supplied by a confidential informant: "[I]f the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given." Iowa Code § 808.3 (2005). Here, the warrant was issued in reliance on the information provided by a CI to Deputy Aesoph, and Deputy Aesoph was properly identified in the warrant. In short, we find "no indication that the magistrate was biased or impartial, nor is there any evidence of a pattern of passive, automatic issuance of warrants." United States v. Hallam, 407 F.3d 942, 946 (8th Cir. 2005). We cannot conclude that the magistrate "wholly abandoned his judicial role." Leon, 468 U.S. at 923.

## B.

Next, Pruett contends that the warrant application[5] was so deficient that the officers executing the warrant could not have had an objectively reasonable belief in the existence of probable cause.[6] See Leon, 468 U.S. at 923. Again, we disagree. The affidavit submitted with the warrant application recounted that a CI advised Deputy Aesoph that he had seen Pruett the previous day in possession of "a ball of methamphetamine approximately the size of a tennis ball." Appellant's Am. App. at 4. According to the CI, Pruett was driving a blue 1997 Chevrolet pickup truck when

---

[4]To the extent Deputy Aesoph was a witness, this requirement was met by the inclusion of Deputy Aesoph's affidavit in the warrant application.

[5]The warrant application was signed and sworn to by Deputy Aesoph. By reference, it included an affidavit by Deputy Aesoph (Attachment A), an "informant attachment" (Attachment B), and a list of property to be seized (Attachment C). See Appellant's Am. App. at 3–6.

[6]In this argument, Pruett seems to be addressing both the second and third circumstances that prevent the application of the Leon exception.

he stopped and attempted to distribute methamphetamine to the CI. The affidavit included the license number of Pruett's truck and stated that the CI had given credible information in the past that had led to two convictions. An attachment to the warrant application further stated that the CI was a "concerned citizen with no reason to fabricate the information." Id. at 5. The warrant application listed the correct address of Pruett's residence as the property to be searched and described the residence as a tan-colored home. A picture of the home was also attached to the application.

Additional facts known to Deputy Aesoph but not included in the affidavit further bolstered the officers' good-faith reliance on the validity of the search warrant. See Rodriguez, 484 F.3d at 1011 ("When assessing the good faith of the officers, we look to the totality of the circumstances, including any information known to the officers, but not included in the affidavit."). Deputy Aesoph testified at the suppression hearing that: (1) he performed a vehicle-records search and found that a blue Chevrolet pickup truck was registered to Pruett; (2) he ran a search of Pruett's driver's license and determined that Pruett was listed as residing on Ideal Avenue in Pisgah; (3) he corroborated the CI's description and location of Pruett's residence by driving to the residence based on the CI's directions; (4) he took pictures of the blue truck at the residence; (5) he spoke to Harrison County personnel about Pruett prior to applying for the warrant; and (6) he knew from personal experience that Pruett drove a blue Chevrolet pickup truck.

Pruett notes that the warrant application contained errors, including the misspelling of his last name (as "Pruitt") and the incorrect location of his house (stating that the house was on the west side, rather than the east side, of the street). These minor clerical errors, however, do not undermine the reasonableness of the officers' reliance on the validity of the warrant. See United States v. Thomas, 263 F.3d 805, 808–09 (8th Cir. 2001) (holding the Leon exception applicable where the address on the warrant was different from the address in the affidavit), cert. denied, 534 U.S. 1146 (2002); United States v. Carlson, 697 F.2d 231, 238 (8th Cir. 1983)

(ruling that unintentional mistake on the part of an officer applying for a search warrant in and of itself will not render a warrant invalid). We note that the warrant listed the correct street address for the residence to be searched and an attached picture of the residence further ensured that officers executed the warrant at the correct location.

Pruett next asserts that the warrant application failed to establish a nexus between his alleged criminal activity—the attempted distribution of methamphetamine from his pickup truck—and his residence. It is true that the warrant application did not specifically mention the presence of criminal activity at Pruett's residence, but we nonetheless conclude that the executing officers did not act entirely without reason in relying on the magistrate's determination that evidence of a crime would be found in the residence. Although our Circuit has not adopted a per se rule that evidence of a defendant's drug trafficking establishes an inference that further evidence of drug trafficking will be found in the defendant's residence, we have held that in applying the Leon exception, such evidence of a defendant's drug trafficking indicated that officers acted reasonably in relying on a search warrant issued for the defendant's residence. See United States v. Ross, 487 F.3d 1120, 1123 (8th Cir. 2007); see also United States v. Marion, 238 F.3d 965, 969 (8th Cir. 2001) (holding that executing officers reasonably relied on judge's determination that there was probable cause to search motel room for evidence of drug activity even though search warrant affidavit failed to mention a connection between motel room and criminal activity).

In addition, Pruett attacks the warrant affidavit because it was based on the uncorroborated statements of a confidential informant. We addressed a similar situation in Hallam and concluded, as we do here, "that the affidavit, while scant, was not so utterly lacking in facts as to render [the officers'] belief that it established probable cause 'entirely unreasonable.'" 407 F.3d at 946. Considering the totality of the circumstances, we conclude that it was objectively reasonable for the officers to rely on the validity of the search warrant. See Leon, 468 U.S. at 922–23.

-8-

C.

Finally, Pruett argues that even if the warrant was facially sufficient, the evidence from the search should have been suppressed because Deputy Aesoph's affidavit in support of the warrant included false facts and omitted material facts with the intent to mislead the magistrate. See Franks v. Delaware, 438 U.S. 154, 155–56 (1978); Leon, 468 U.S. at 923. Pruett bases this argument on inconsistencies between the trial testimony of Bradley Kuhlman, who was identified as the CI discussed in the affidavit, and information Deputy Aesoph included in the affidavit. Specifically, Kuhlman testified that he told Deputy Aesoph that he saw methamphetamine in Pruett's house, not in Pruett's pickup truck. Moreover, the affidavit omitted any mention of Kuhlman's criminal history, which included felony offenses.

We have examined the trial transcript and warrant affidavit and have found no indication that the affidavit included intentionally or recklessly false information. While Kuhlman's recollection at trial of the details concerning his observation of Pruett with methamphetamine differed from the description recounted by Deputy Aesoph in the affidavit, the inconsistencies are understandable considering the length of time between Kuhlman's statement and trial testimony. The trial was held approximately one and one-half years after the warrant was sought. Moreover, with regard to the *key* facts, Kuhlman's trial testimony was consistent with the statements recounted by Deputy Aesoph: Kuhlman observed Pruett with a large amount of methamphetamine, and Pruett attempted to sell some of the methamphetamine to Kuhlman.

Nor has Pruett demonstrated that Deputy Aesoph intentionally or recklessly omitted information about Kuhlman's criminal history in an attempt to mislead the magistrate. At the suppression hearing, Deputy Aesoph testified that he did not have access to Kuhlman's criminal history at the time he completed the warrant application. See United States v. Allen, 297 F.3d 790, 795 (8th Cir. 2002) (holding that omissions

of informant's criminal history from warrant affidavit did not support suppression where the affiant did not know the exact nature of the criminal history). Moreover, we do not believe that the information would have changed the magistrate's probable-cause analysis had it been included in the affidavit. Kuhlman's credibility was supported by the fact that he had previously given Deputy Aesoph credible information leading to two arrests and by the fact that Deputy Aesoph was able to corroborate the information Kuhlman provided regarding Pruett's pickup truck and residence. Cf. id.; United States v. LaMorie, 100 F.3d 547, 555 (8th Cir. 1996) (stating that the details of an informant's criminal record were not material to magistrate's credibility determination where magistrate was generally aware of the informant's crimes and the informant's credibility was supported by other evidence).

We reject Pruett's arguments that the circumstances of this case preclude the application of the Leon exception. We agree with the District Court that the Leon exception applies and affirm the District Court's denial of Pruett's motion to suppress evidence.

III.

Pruett next argues that the District Court should have granted his motion to dismiss the counts added in the superseding indictment on the basis of prosecutorial vindictiveness. He claims that Counts 7 and 8 were filed in retaliation for his refusal to plead guilty to the charges in the original indictment. In support of his argument, Pruett notes that the superseding indictment was filed just five days after his attorney informed the prosecutor that Pruett would not plead guilty and wished to proceed to trial.

While the government may take action to punish an individual for violating the law, punishing an individual for exercising a constitutional right, such as the right to trial, amounts to prosecutorial vindictiveness. United States v. Goodwin, 457 U.S.

-10-

368, 372 (1982). The burden is on Pruett to prove prosecutorial vindictiveness. See United States v. Campbell, 410 F.3d 456, 461 (8th Cir.), cert. denied, 126 S. Ct. 492 & 768 (2005). This burden is a heavy one because we recognize the broad discretion that prosecutors have in enforcing criminal statutes. Id. Moreover, the burden is especially heavy when the additional charges were brought prior to the start of trial, as they were here. Goodwin, 457 U.S. at 381–82 ("At this stage of the proceedings, the prosecutor's assessment of the proper extent of prosecution may not have crystallized. . . . A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution."). The Supreme Court has refused to recognize a presumption of vindictiveness under the facts alleged by Pruett: "The possibility that a prosecutor would respond to a defendant's pretrial demand for a jury trial by bringing charges not in the public interest that could be explained only as a penalty imposed on the defendant is so *unlikely* that a presumption of vindictiveness certainly is not warranted." Id. at 384 (emphasis in original). Rather, to carry his burden, Pruett must present objective evidence that the filing of the superseding indictment was motivated by a desire to punish him for exercising a legal right. See id.; Campbell, 410 F.3d at 461.

Pruett has presented no evidence that the government filed Counts 7 and 8 to punish him for exercising his right to a jury trial on the counts in the original indictment. And because no presumption of vindictiveness has arisen, there is nothing to support Pruett's claim of vindictive prosecution. We affirm the District Court's refusal to dismiss the superseding indictment on this ground.

## IV.

Pruett next asserts that the District Court erred in denying his post-trial motion for a judgment of acquittal on Count 1. See Fed. R. Crim. P. 29(c). Count 1 charged Pruett with conspiracy to distribute methamphetamine between January 2003 and September 2004. According to Pruett, the evidence presented at trial was insufficient to establish his participation in a conspiracy. We review de novo the denial of a motion for a judgment of acquittal. United States v. Peters, 462 F.3d 953, 957 (8th Cir. 2006). "We view the evidence in the light most favorable to the jury's verdict and draw all reasonable inferences in the government's favor, upholding the conviction as long as 'there is an interpretation of the evidence that would allow a reasonable-minded jury to find the defendant[] guilty beyond a reasonable doubt.'" Id. (quoting United States v. Vig, 167 F.3d 443, 447 (8th Cir.), cert. denied, 528 U.S. 859 (1999)).

To convict Pruett of conspiracy, the government had to prove (1) that there was an agreement to distribute drugs, (2) that Pruett had knowledge of the agreement, and (3) that Pruett intentionally joined the conspiracy. See United States v. Jiminez, 487 F.3d 1140, 1146 (8th Cir. 2007); United States v. Smith, 487 F.3d 618, 620 (8th Cir. 2007). The agreement need not be formal or explicit, however. Smith, 487 F.3d at 620. Rather, "'the government need only establish a tacit understanding between the parties, and this may be shown wholly through the circumstantial evidence.'" Jiminez, 487 F.3d at 1146 (quoting United States v. Cabrera, 116 F.3d 1243, 1245 (8th Cir. 1997)).

Pruett admits that the evidence adduced at trial indicated that he purchased small quantities of methamphetamine from a source known as "Alfredo" in Lincoln, Nebraska. He argues, however, that the government produced no evidence indicating that he entered into an agreement to distribute the methamphetamine. After carefully reviewing the record in the light most favorable to the guilty verdict, we hold that a reasonable-minded jury could have found Pruett guilty of conspiracy.

Pruett's contention that he purchased only small quantities of methamphetamine from Alfredo is belied by witness testimony at trial. Tara Clemon testified that she accompanied Pruett to Lincoln, Nebraska, in July 2004 to obtain methamphetamine and that Pruett obtained approximately one ounce of methamphetamine in Lincoln about once a week for four to six weeks during the summer of 2004. Both Clemon and Alan Spencer testified that they had observed Pruett with approximately one ounce of methamphetamine that Pruett indicated he had obtained from Alfredo. Lisa Hall testified that she also accompanied Pruett to Lincoln to obtain methamphetamine. The two went to an apartment complex in Lincoln, Pruett went inside, and after he returned to the pickup truck, Hall found a package of methamphetamine in her purse; Pruett took the package after the two returned to Iowa. Given Hall's description of the size of the package, Special Agent Christopher Leighter estimated that it contained between two ounces and one-quarter pound of methamphetamine. Leighter testified that methamphetamine is commonly ingested in doses of one-quarter gram.[7] As one ounce equals approximately 28.35 grams, each ounce of methamphetamine purchased by Pruett could have been divided into 113 individual doses. It was reasonable for the jury to infer that the quantity of drugs Pruett purchased from Alfredo was purchased for resale and not for personal use. See United States v. Schindler, 77 F.3d 245, 246–47 (8th Cir. 1996) (per curiam) ("Expert testimony established that a half-ounce of methamphetamine was an amount associated with distribution, rather than personal use."). Our Court has ruled that multiple purchases of resale quantities of drugs support a conviction for conspiracy to distribute. United States v. Delpit, 94 F.3d 1134, 1152 (8th Cir. 1996).

Pruett's conspiracy conviction is further supported by the trial testimony of a number of witnesses who testified that Pruett distributed methamphetamine. Clemon testified that she obtained from Pruett at least one gram of methamphetamine daily

[7]Leighter stated, however, that heavy drug users often ingest more than one-quarter gram per day. Several witnesses testified that they ingested 1.7 grams or more of methamphetamine per day during the relevant time period.

from about mid-June to mid-July 2004. Clemon also indicated that she had witnessed Pruett giving methamphetamine to other people on five or six occasions. Spencer testified that Pruett gave him between 1.75 grams and 3.5 grams of methamphetamine on one occasion in July 2004 and smaller quantities of methamphetamine on six or seven occasions between July and September 2004. Troy Garrison testified that he purchased one-half ounce of methamphetamine from Pruett on one occasion around August 2004. Perry Christensen stated that he purchased one-quarter ounce of methamphetamine from Pruett on two occasions. Christensen further testified that he purchased between 1.7 grams and 3.5 grams of the drug from Pruett over one hundred times between spring or summer 2003 and August 2004. Kuhlman testified that he purchased between one-half gram and 1.75 grams of methamphetamine from Pruett several times from the winter of 2003/2004 until September 2004. Kuhlman also witnessed Pruett sell methamphetamine to others, including on one occasion when Pruett "fronted" (distributed the drugs but did not demand payment until a later date) one-half ounce of the drug to a female. A number of witnesses testified that Pruett did not manufacture methamphetamine—and no contrary evidence was presented on this point—making it reasonable to infer that the methamphetamine Pruett sold was the methamphetamine he obtained from Alfredo.

Given the wealth of evidence showing both Pruett's purchases and sales of methamphetamine, we conclude that a reasonable jury could have found him to be a knowing member of a conspiracy to distribute the drug. See United States v. Bordeaux, 436 F.3d 900, 903–04 (8th Cir. 2006) (upholding conspiracy conviction where the record included testimony from witnesses who purchased methamphetamine from the defendant, testimony from witnesses who sold methamphetamine to the defendant, and testimony from a witness who observed the presence of drugs after a "source" left the defendant's house). We affirm the District Court's denial of Pruett's motion for a judgment of acquittal.

## V.

Pruett alleges that the District Court erred in denying his motion for a new trial under Federal Rule of Criminal Procedure 33. Rule 33 provides that a court may grant a new trial "if the interest of justice so requires." In deciding whether to grant a new trial, a district court need not view the evidence in the light most favorable to the verdict, but instead may weigh the evidence and evaluate the credibility of witnesses. United States v. Walker, 393 F.3d 842, 847 (8th Cir.), cert. denied, 126 S. Ct. 463 (2005). A district court should exercise its authority to grant a new trial "'sparingly and with caution.'" Id. at 848 (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). We review the "denial of a motion for a new trial for abuse of discretion and will reverse only if the evidence weighs heavily enough against the verdict that a miscarriage of justice may have occurred." Id. (internal quotations and citation omitted).

Pruett asserts that inadequacies in the search warrant and the alleged Franks violation, as well as inadequate evidence to support the conspiracy conviction, require a new trial. We disagree and conclude that there has been no miscarriage of justice in this case. As discussed above, the evidence obtained from the search of Pruett's residence was properly admitted under the Leon exception, and the differences between Aesoph's affidavit and Kuhlman's testimony were not material, see United States v. Packer, 730 F.2d 1151, 1156 (8th Cir. 1984) (ruling that newly discovered evidence must be material to support a new trial). Moreover, after reading the trial transcript, we conclude that the evidence was more than sufficient for the jury to have found Pruett guilty of the crimes charged. See Walker, 393 F.3d at 848 (affirming denial of new trial where the evidence supported the jury's verdict). We affirm the District Court's denial of Pruett's motion for a new trial.

## VI.

Finally, Pruett challenges his conviction on Count 8 for using a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). This count was based on Pruett's receipt of a firearm in exchange for methamphetamine. Pruett argues that the term "uses" in § 924(c)(1) requires something more than mere receipt of a firearm. Thus, according to Pruett, the District Court erred in submitting Count 8 to the jury. As Pruett concedes, Eighth Circuit law precludes this argument. In United States v. Cannon, we ruled that "a person can 'use' a firearm in violation of § 924(c) by 'receiving' the firearm in a drugs for weapon exchange." 88 F.3d 1495, 1509 (8th Cir. 1996). While Pruett directs us to a case currently before the Supreme Court that addresses this issue, see Watson v. United States, 127 S. Ct. 1371 (2007), Cannon nonetheless remains good law by which we are bound. We affirm the District Court and uphold Pruett's conviction on Count 8.

## VII.

For the foregoing reasons, the judgment of the District Court is affirmed.

_____