# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2162

_____

United States of America,        *
                                   *

       Appellee,          *   Appeal from the United States
                               *   District Court for the District of
   v.                    *   Minnesota.
                               *

Carl Lee Richardson,        *
                                   *

       Appellant.        *

_____

Submitted: December 12, 2007
Filed: August 12, 2008

_____

Before BYE, ARNOLD, and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Carl Lee Richardson appeals from his conviction, following a jury trial where he was found guilty of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). On appeal, Richardson argues the district court[1] erred by (1) admitting evidence obtained from an allegedly unconstitutional seizure, (2) failing to dismiss the indictment with prejudice after a violation of the Speedy Trial Act, (3) holding trial on the same day the court dismissed the indictment for the speedy-trial violation and a new indictment was filed, (4) holding trial in and choosing a jury pool

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

from a geographic region other than where the offense occurred, and (5) allowing expert testimony from a scientist other than the one who performed the scientific tests, allegedly in violation of the Confrontation Clause and the Federal Rules of Evidence. We affirm.

## I. Background

### A. The Arrest

Officer Jamie Sipes of the St. Paul Police Department arrested Richardson when he was on foot on the night of March 10, 2006. Officer Sipes first observed Richardson when Richardson was driving and the headlights on his vehicle "dipped" when Officer Sipes's marked police car pulled into the intersection. Officer Sipes testified that dipping of headlights indicates a sudden stop and that he suspected the driver of the car had stopped his car suddenly because he saw the marked police car.

Officer Sipes investigated the situation. He testified: "I could see the driver's door was opening, and with my headlights I could see a taller figure that was wearing black pants, black sweatshirt, or a black upper top, and had gotten out of the car and was walking behind the car towards the sidewalk." Officer Sipes testified he drove past the car. As he did so, he could tell the figure was a black male. The male was Richardson, who was walking on the sidewalk. Officer Sipes continued driving, and then made a U-turn to see Richardson walking away from him. Officer Sipes lost sight of him for "a couple seconds" as Richardson walked behind a construction dumpster.

Officer Sipes parked his car and approached Richardson on foot. Officer Sipes was in police uniform, which included a badge and a gun. Officer Sipes approached Richardson while shining a light on him. Officer Sipes asked Richardson why he pulled over quickly upon seeing the police car. Richardson responded that he did not

have a valid driver's license and did not want to get another ticket. Officer Sipes testified he noticed Richardson "beginning to get animated," meaning "his hands were kind of going back and forth." Officer Sipes testified that Richardson "appeared to be getting nervous because he was backing away from me." Officer Sipes asked Richardson for his identification, which Richardson did not have. Richardson told Officer Sipes his name and date of birth, and Officer Sipes used this information to verify Richardson's identity. Officer Sipes told Richardson he would be getting a ticket and asked Richardson to sit in the police car. Officer Sipes patted down Richardson for weapons before Richardson got in the car. Officer Sipes then gave Richardson a ticket.

In the police car, Officer Sipes asked Richardson why he parked his car where he did. Richardson responded that he lived about six blocks away and that he parked his car there whenever he visited his girlfriend because he did not want his other girlfriend to know.

While Richardson was at the scene, Officer Sipes went to where Richardson had been when Officer Sipes lost sight of him behind the dumpster. There, Officer Sipes found a handgun at the base of a tree. Officer Sipes testified he also found a glove two steps away from the firearm. The handgun was dry, unlike other metal objects around the area, which were covered in dew. Officer Sipes put his hand near the gun, and it was warm.

Officer Sipes then called a canine officer, who brought a dog to the scene. Based on the dog's tracking, the canine officer told Richardson the gun had recently been laid there. The dog also appeared to make a connection between Richardson's vehicle and the gun. Officer Sipes approached Richardson, asking him if he had been arrested before. Richardson admitted he had a felony conviction. Officer Sipes then arrested Richardson for being a felon in possession of a firearm.

The federal government indicted Richardson for the federal crime of being a felon in possession of a firearm. Richardson had at least three prior convictions for violent felonies or serious drug offenses. He was convicted of Aggravated Battery with Great Bodily Harm in 1996 and of Aggravated Kidnaping and two counts of Aggravated Battery in 2000.

## B. Pretrial Motions

Richardson filed several motions to suppress evidence, alleging that Officer Sipes unlawfully seized him and that all physical evidence and statements should be suppressed. The magistrate judge[2] determined that suppression of the evidence obtained pursuant to the pedestrian stop was not required because Richardson was not seized. The district court upheld the magistrate judge's recommendation to deny Richardson's motions to suppress the evidence and statements, finding that Richardson was not seized.

Richardson also filed a motion to dismiss under 18 U.S.C. § 3162(a)(2) because the government did not bring him to trial within seventy days of his arraignment, as required by the Speedy Trial Act, 18 U.S.C. § 3161. At a hearing on January 31, 2007, the court told the parties it was inclined to grant Richardson's motion to dismiss, but it would nevertheless start Richardson's trial on February 5, 2007, if the government had secured re-indictment that day. Richardson did not object to holding trial on February 5. On February 5, the court dismissed the original indictment without prejudice. Richardson was re-indicted the same day. He moved for a thirty-day continuance. The district court denied the motion, and the trial commenced.

---

[2]The Honorable Arthur J. Boylan, United States Magistrate Judge for the District of Minnesota.

## C. DNA Experts

At trial, the government called Alyssa Bance, a forensic scientist with the Minnesota Bureau of Criminal Apprehension, to testify about DNA evidence linking Richardson to the firearm. Specifically, Bance testified about DNA testing performed by another scientist in the office, Jacquelyn Kuriger. Bance testified that she personally "didn't actually receive the evidence in this case," but instead "received the case file with [Kuriger's] notes and results." Bance did, however, perform a peer review, in which she "look[ed] for basically everything down to that the i's are dotted and the t's are crossed. And if there's anything crossed out, are they initialed." Bance looked to make sure "everything is . . . complete from the start of the case in the analysis to the end of the DNA results and the report." Bance testified, generally, the role of the peer reviewer is to "go through all of the case notes and documentation" the initial scientist did "to be sure that everything has been done properly and documented properly." Bance testified that "[t]he peer reviewer in a DNA case also does a second independent analysis of the DNA data and compares" it to the first scientist's review "to be sure that the two scientists agree in all aspects of the DNA testing."

Bance did not perform or witness any DNA testing of the samples in this case, but rather testified as to the tests Kuriger performed and the procedures and controls Kuriger used, as well as the results of Bance's own independent analysis of Kuriger's data. When asked what controls were used during the DNA extraction and testing, Bance asked to refer to the case file. At this point, the defense attorney objected for lack of foundation and hearsay. The district court overruled the objection. Bance continued to testify about the tests Kuriger performed, Kuriger's analysis, and the results. Bance admitted her only knowledge of the tests was from reviewing the paperwork Kuriger generated, conducting a second independent analysis of Kuriger's data, and comparing her analysis of the data with Kuriger's analysis of the same data. Defense counsel raised hearsay objections multiple times throughout Bance's

testimony. The district court overruled these objections. Defense counsel did not object to the admission of this testimony on constitutional grounds.

## II. Discussion

Richardson raises numerous arguments in this appeal, relating to pre-trial motions, trial scheduling, and the trial itself. We reject these arguments and affirm his conviction.

### A. Seizure

Richardson argues broadly that all evidence must be suppressed under the Fourth Amendment. In reviewing the district court's denial of Richardson's suppression motions, we review for clear error the district court's factual findings and determine de novo whether the Fourth Amendment was violated. United States v. Bell, 480 F.3d 860, 863 (8th Cir. 2007).

At a hearing on these motions, Richardson testified Officer Sipes initially stopped him by telling him to "[c]ome here" in a "[p]olice tone of voice." The district court found: "Sipes did not expressly order the man to stop, but the officer stated that he would like to speak with him and asked why he had abruptly stopped his vehicle and got out when he saw the police car." This factual finding is consistent with the testimony and is thus not clearly erroneous. See United States v. Frencher, 503 F.3d 701, 701 (8th Cir. 2007) (noting that a district court's credibility determination made after holding "a hearing on the merits of a motion to suppress is virtually unassailable on appeal" (quotation omitted)).

Richardson testified Officer Sipes told him to "take [his identification] out," and then asked him to "take everything out of [his] pockets." Richardson also testified Officer Sipes looked through his wallet and removed everything from it. The district

court, however, found "[t]he officer did not look through the defendant's wallet to obtain identification or other information." This is consistent with Officer Sipes's testimony and is thus not clearly erroneous. Id.

We conclude Officer Sipes's initial contact with Richardson did not constitute a seizure. Richardson was walking on the sidewalk, and Officer Sipes approached him and asked him a question. A reasonable person would have felt free to leave. "'[L]aw enforcement officers do not violate the Fourth Amendment by merely approaching an individual on the street or in another public place, . . . by putting questions to him if the person is willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such questions.'" United States v. Barry, 394 F.3d 1070, 1074 (8th Cir. 2005) (quoting Florida v. Bostick, 501 U.S. 429, 434 (1991)).

Richardson responded immediately to Officer Sipes's question by stating that he was driving without a license. This gave Officer Sipes probable cause to arrest Richardson. Thus, Officer Sipes could detain Richardson and give him a ticket, and Richardson was not unlawfully seized. Richardson's statements were not the product of an unlawful seizure.

We need not determine whether Officer Sipes's continued detention of Richardson after issuing the ticket constituted an unlawful seizure, as Officer Sipes did not obtain any additional evidence from the continued detention. There was no evidence Richardson said anything during this time period. No physical evidence was obtained during this period, except for the handgun. The handgun, found under a tree, was abandoned. Richardson had "relinquished his reasonable expectation of privacy" over the handgun. United States v. Simpson, 439 F.3d 490, 494 (8th Cir. 2006); see also California v. Hodari D., 499 U.S. 621, 629 (1991) (determining a motion to exclude evidence was properly denied because the defendant abandoned the evidence and it was thus not the fruit of a seizure). The firearm was thus admissible.

We affirm the district court's denial of Richardson's motion to suppress Richardson's statements and the evidence.

## B. Speedy Trial Act

The Speedy Trial Act required that the government try Richardson within seventy days of his indictment or arraignment, whichever was later. 18 U.S.C. § 3161(c)(1); see also United States v. Elmardoudi, 501 F.3d 935, 941 (8th Cir. 2007). The government failed to do this, and the district court dismissed the indictment, as required by the Act. 18 U.S.C. § 3162(a)(2). The district court dismissed the indictment without prejudice, allowing the government to re-indict Richardson. Richardson appeals, arguing the district court should have dismissed the original indictment with prejudice.

We review the district court's decision to dismiss the indictment without prejudice, instead of with prejudice, for abuse of discretion. United States v. Becerra, 435 F.3d 931, 935 (8th Cir. 2006). As discussed below, district courts consider several factors in determining whether to dismiss an indictment with or without prejudice. A "district court abuses its discretion if it relies on a clearly erroneous factual finding, . . . an erroneous application of law to fact," or "if it commits a clear error in judgment in weighing the factors." Elmardoudi, 501 F.3d at 941.

The district court did not abuse its discretion here. In determining whether an indictment dismissed under a speedy-trial violation should be dismissed with or without prejudice, a district court must consider "the seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a re-prosecution on the administration of [speedy-trial laws] and on the administration of justice." 18 U.S.C. § 3162(a)(2). A court should also consider "prejudice to the defendant resulting from the [speedy-trial] violation." Elmardoudi, 501 F.3d at 941(citing United States v. Taylor, 487 U.S. 326, 334 (1988)). "[I]f the district court

fully considers the required factors and does not rely on clearly erroneous factual findings, the district court's judgment of how opposing considerations balance should not lightly be disturbed." Id. (quotation omitted).

The district court here considered all these factors. The court determined that Richardson's possession of a firearm when he had three or more violent felony convictions was serious. The court noted the offense indicated Richardson's failure to reform and his disrespect for the law. This, along with the offense's fifteen-year statutory mandatory minimum "highlights the crime's seriousness."

The district court also determined that the circumstances leading up to the dismissal of the indictment weighed in favor of dismissing it without prejudice. "The Speedy-Trial Act violation here is relatively insubstantial . . . ." The Act was violated "in large part because of the [c]ourt's inattentiveness to [Richardson's] speedy-trial rights; there is no evidence of any attempt by the Government to gain a tactical advantage."

The district court determined that dismissing the indictment without prejudice would not undermine the administration of justice or the Speedy Trial Act because the government did not act in bad faith. See United States v. McKinney, 395 F.3d 837, 842 (8th Cir. 2005) (noting that a dismissal with prejudice is more appropriate when the government acts in bad faith).

In discussing the facts and circumstances leading up the dismissal of the indictment, the district court addressed the final consideration—prejudice to Richardson resulting from the violation—and explained that Richardson alleged he suffered strain on his family ties and relationships. The district court found strain occurs as a result of criminal prosecutions generally, regardless of any speedy-trial violation. The court noted Richardson's failure to assert that the preparation of his defense was impeded by the violation, thus indicating a lack of prejudice.

-9-

The district court here "fully consider[ed] the required factors and [did] not rely on clearly erroneous factual findings." See Elmardoudi, 501 F.3d at 941 (quotation omitted). Therefore, we conclude the district court did not abuse its discretion in dismissing the indictment without prejudice.

## C. Same-day Trial

Richardson appeals from the district court's decision to hold his trial on the same day the court dismissed his original indictment without prejudice and the government re-indicted. He argues the district court should have granted his motion for a thirty-day continuance. In support of his argument, Richardson cites a provision of the Speedy Trial Act requiring that "the trial shall not commence less than thirty days from the date on which the defendant first appears through counsel." 18 U.S.C. § 3161(c)(2). This argument fails. Section 3161(c)(2) does not require a thirty-day continuance from the filing of the superseding indictment. 18 U.S.C. § 3161(c)(2) (making no reference to the dismissal of the indictment or the filing of a superseding indictment); see also United States v. Punelli, 892 F.2d 1364, 1369 (8th Cir. 1990) ("We reject [the defendant's] suggestion that § 3161(c)(2) enacts a *per se* rule that the thirty-day speedy trial clock automatically restarts upon the filing of a superseding indictment . . . ."). The district court can elect whether to grant a continuance under its "broad discretion," id., and we review this decision for abuse of discretion, United States v. Vaughn, 111 F.3d 610, 613 (8th Cir. 1997).

We conclude the district court did not abuse its discretion in denying Richardson's motion for a continuance. We have held a defendant is not entitled to a thirty-day continuance "even when the superseding indictment is not substantially the same as the original indictment but is materially different and even when the defendant suffers prejudice." Punelli, 892 F.2d at 1369. In this case, there was even less reason to grant a continuance. The superseding indictment was identical to the previous one. Richardson first appeared through counsel more than six months before

his trial. Furthermore, the court notified Richardson that it was inclined to grant the dismissal of the indictment on February 5, and that the trial would take place the same day if the government had the superseding indictment ready. Richardson did not object. The district court did not abuse its discretion in declining to grant Richardson a thirty-day continuance.

## D. Trial and Jury Pool Location

Richardson also argues the district court erred in holding trial in and choosing a jury pool from Duluth, Minnesota, a geographic region other than St. Paul, Minnesota, where the offense occurred. This argument fails, as Richardson does not have a right to have his trial in or jurors summoned from a particular division of the state and district where the crime was committed. See United States v. Stanko, 528 F.3d 581, 584 (8th Cir. 2008) ("[A] defendant does not have a right to be tried in a particular division." (quotation omitted)); United States v. Wipf, 397 F.3d 677, 686 (8th Cir. 2005) ("The Sixth Amendment does not require jurors to be summoned from a particular division."). Therefore, the district court did not abuse its discretion in trying Richardson in Duluth and summoning jurors from that division. See id.; see also United States v. Davis, 785 F.2d 610, 616 (8th Cir. 1986) ("A district court has broad discretion in determining where within a district a trial will be held, and to overturn the court's decision the defendant must prove abuse of that discretion or prejudice.").

## E. Expert Testimony

### i. Confrontation Clause

Richardson argues the district court admitted Bance's testimony describing the DNA tests conducted and results obtained by another scientist, Kuriger, in violation of the Sixth Amendment's Confrontation Clause. Richardson failed to object to the admission of this testimony on constitutional grounds; thus, we review this issue for plain error. United States v. Rodriguez, 484 F.3d 1006, 1013 (8th Cir. 2007) ("Because [the defendant] did not raise a Confrontation Clause objection to this testimony at trial, we review his claim for plain error.").

Under plain error review, we reverse only if there has been (1) an error, (2) that is plain, and (3) that affects substantial rights. United States v. Pirani, 406 F.3d 543, 550 (8th Cir. 2005) (citing United States v. Olano, 507 U.S. 725, 732–36 (1993)). If these conditions are met, we may exercise discretion to notice the error "only if (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id. (quotation omitted).

The Supreme Court determined that the Confrontation Clause bars admission of testimonial statements of witnesses not at trial unless the witnesses were unavailable to testify and the defendant had a prior opportunity to cross-examine. Crawford v. Washington, 541 U.S. 36, 68 (2004); see also Giles v. California, 128 S. Ct. 2678, 2682 (8th Cir. 2008). The Supreme Court in Crawford did not define "testimonial," Crawford, 541 U.S. at 68 ("We leave for another day any effort to spell out a comprehensive definition of testimonial."), but provided that the term covers "at a minimum . . . prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and . . . police interrogations," id.

We need not address whether admission of the evidence in light of the Confrontation Clause was in error, as we determine the error was not plain under the second step of Olano. 507 U.S. at 734. As the Supreme Court articulated, "'[p]lain' is synonymous with 'clear' or, equivalently, 'obvious.'" Id. Neither our court nor the Supreme Court has addressed whether DNA samples and related testimony are testimonial.[3] Other federal courts have found DNA samples themselves are not testimonial. See United States v. Washington, 498 F.3d 225, 232 (4th Cir. 2007) (determining that laboratory test results are not testimonial); United States v. Moon, 512 F.3d 359, 362 (7th Cir. 2008) (holding the data regarding DNA evidence is not testimonial). Therefore, the district court's decision to admit the evidence was not in violation of clear law, and we cannot find the error was "plain," See Olano, 507 U.S. at 734 ("[C]ourt of appeals cannot correct an error pursuant to [plain error review] unless the error is clear under current law."); see also United States v. Bennett, 469 F.3d 46, 50 (1st Cir. 2006) (finding no plain error where the court had not previously addressed the issue and other circuit courts were split); United States v. Jones, 108 F.3d 668, 671–72 (6th Cir. 1997) (assuming the district court erred, but determining the error was not plain because there was "only sparse case law addressing" the issue and it was "divergent and conflicting").

Additionally, the admission of Bance's testimony that Richardson's DNA evidence matched the DNA evidence found on the gun was not in error. Richardson argues that the tests and conclusions performed by Kuriger are testimonial; therefore Bance could not testify as to these without violating the Confrontation Clause. Bance, however, testified as to her own conclusions and was subject to cross-examination. Although she did not actually perform the tests, she had an independent responsibility to do the peer review. Her testimony concerned her independent conclusions derived

---

[3]The Supreme Court recently granted a petition for a writ of certiorari addressing the question of whether a forensic analyst's laboratory report prepared for use in prosecution is testimonial. See Commonwealth v. Melendez-Diaz, 870 N.E.2d 676 (Mass. App. Ct. 2007), cert. granted, 128 S. Ct. 1647 (2008).

from another scientist's tests results and did not violate the Confrontation Clause. See Moon, 512 F.3d at 362 (holding the reviewing scientist "was entitled to analyze the data that [the first scientist] had obtained"). "[T]he Sixth Amendment does not demand that a chemist or other testifying expert have done the lab work himself." Id. Thus, Bance's testimony did not violate the Confrontation Clause. Because there was no error, the admission of the testimony was not plainly erroneous. See Olano, 507 U.S. at 732–33.

ii. Hearsay

Because defense counsel objected to the admission of the DNA testing on hearsay grounds, we review the district court's decision to overrule the hearsay objection for abuse of discretion. United States v. Two Shields, 497 F.3d 789, 793 (8th Cir. 2007).

We have previously determined, as a general matter, DNA evidence itself is admissible. United States v. Martinez, 3 F.3d 1191, 1198–99 (8th Cir. 1993). However, testimony regarding DNA evidence is admissible only if the court determines the expert derived the testimony from use of "a reliable methodology or principle in the particular case." Id. at 1198. We provided that the court must "make an initial inquiry into the particular expert's application of the scientific principle or methodology in question," and specifically that "[t]he court should require the testifying expert to provide affidavits attesting that he properly performed the protocols involved in DNA profiling." Id. We hold that Bance's testimony regarding the protocols involved was proper and not hearsay. She testified regarding her education, training, and experience in DNA testing. She also testified as to her own knowledge of how DNA testing was done and of the protocols and controls followed by scientists in the office. She reviewed Kuriger's reports and reached her own conclusions that the procedures were properly followed in this case.

Bance also testified that Richardson's DNA matched the DNA found on the gun. Although Bance used Kuriger's reports in forming her opinion, Bance testified as to her own independent conclusion. This was not hearsay, and the district court did not abuse its discretion in admitting the testimony. See United States v. Davis, 40 F.3d 1069, 1073, 1075 (10th Cir. 1994) (holding that an expert could testify as to DNA procedures and matches despite not conducting or witnessing all of the tests in the case because "it was accepted in her field to rely upon the notes of lab technicians [and] . . . [i]t is also firmly established that an expert may testify from another person's notes").

## III. Conclusion

Based on the foregoing reasons, we affirm.

_____